**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

APPLICATION OF NIKOLAI KAZAKOV
AND VERA KAZAKOVA TO TAKE
DISCOVERY FOR USE IN A FOREIGN
PROCEEDING PURSUANT TO 28 U.S.C. §
1782

Case No. 26 Misc. _____

**MEMORANDUM OF LAW IN SUPPORT OF PETITION OF NIKOLAI KAZAKOV
AND VERA KAZAKOVA FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A
FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

WHITE AND WILLIAMS LLP
Thomas E. Butler
Nicole A. Sullivan
810 Seventh Avenue – Suite 500
New York, NY 10036
(212) 244-9500
*Attorneys for Petitioners*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT....................................................................................1

FACTUAL BACKGROUND ......................................................................................3

I.     THE PARTIES ...................................................................................................3

II.    THE PARTNERSHIP BETWEEN OLEG AND NIKOLAI...............................4

III.   NIKOLAI DEMANDS HIS PART OF THE PARTNERS' FORTUNE ............4

IV.   THE GLOBAL LITIGATION .........................................................................5

V.    THE U.K. PROCEEDING AND THE COUNTERCLAIMS ...........................6

VI.   THE BOURLAKOVAS' 1782 APPLICATION ...............................................6

VII.  THE DISCOVERY SOUGHT .........................................................................7

ARGUMENT .............................................................................................................7

I.     LEGAL STANDARD .......................................................................................7

II.    THE STATUTORY REQUIREMENTS OF SECTION 1782 ARE SATISFIED................9

      A.     CHIPS Resides in this District.................................................................9

      B.     The Discovery Sought is "For Use" in a Foreign Proceeding ..............10

      C.     The Petitioners Are Interested Persons Under Section 1782 ................11

III..  INTEL'S DISCRETIONARY FACTORS FAVOR GRANTING THE PETITION .........11

      A.     CHIPS Is Not a Party to the U.K. Proceeding .......................................11

      B.     The U.K. Court Will Be Receptive to the Discovery ............................11

      C.     The Discovery Sought by Petitioners Would Not Circumvent the U.K. Judicial Process ................................................................................13

      D.     The Discovery Sought Is Narrowly Tailored.........................................13

      E.     The Decision on the Bourlakovas' Application Mandates Grant of the Petition ..14

IV.   THE COURT SHOULD GRANT PETITIONERS' APPLICATION EX PARTE ............15

V.    THE COURT SHOULD HOLD THAT THE U.K. SHOULD DETERMINE THE EXTENT TO WHICH THE DOCUMENTS DISCLOSED SHOULD BE SHARED WITH THE BOURLAKOVAS.............................................................15

CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*BANOKA, S.à.r.l. v. Alvarez & Marsal Inc.*,
  No. 1:22-MC-182, 2024 U.S. Dist. LEXIS 51534 (S.D.N.Y. Mar. 22, 2024) .........................3

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012).................................................................................................8, 9, 11

*Ecoprivate Bus. Ltd. v. The Clearing House Payments Co. L.L.C.*,
  No. 23 Misc. 232 (KPF), 2023 U.S. Dist. LEXIS 131156 (S.D.N.Y. July 28,
  2023) ......................................................................................................................................9

*Euromepa S.A. v. R. Esmerian Inc.*,
  154 F.3d 24 (2d Cir. 1998)....................................................................................................10

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
  33 F.4th 669 (2d Cir. 2022) ....................................................................................................3

*In re 28 U.S.C. 1782*,
  249 F.R.D. 96 (S.D.N.Y. 2008) ........................................................................................11, 13

*In re Abraaj Inv. Mgmt. Ltd.*,
  No. 20 Misc. 229 (VSB), 2023 U.S. Dist. LEXIS 54296 (S.D.N.Y. Mar. 29,
  2023) ....................................................................................................................................12

*In re Accent Delight*,
  *869 F.3d 121* (2d Cir. 2017) ...............................................................................................3, 10

*In re BonSens.org*,
  95 F.4th 75 (2d Cir. 2024) .......................................................................................................8

*In re Bourlakova*,
  24-3187, 25-49, 2025 U.S. App. LEXIS 15344 (2d Cir. June 23, 2025) ...............................15

*In re Bourlakova*,
  24-MC-71, 2024 U.S. Dist. LEXIS 212324 (S.D.N.Y. Nov. 20, 2024) ......................9, 11, 14

*In re Byrne*,
  No. 23 Misc. 048 (VEC), 2023 U.S. Dist. LEXIS 75843 (S.D.N.Y. May 2,
  2023) ......................................................................................................................................9

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2018).....................................................................................................9

*In re Deposit Guarantee Fund (Ukraine)*,
  No. 21 Misc. 203 (AT), 2021 U.S. Dist. LEXIS 76715 (S.D.N.Y. Apr. 21,
  2021) ....................................................................................................................................12

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002).................................................................................9

*In re Emergency Ex Parte Application of Godfrey*,
   No.17-21631-CV-COOKE-GOODMAN, 2018 WL 1863749 (S.D. Fla. Feb.
   22, 2018), *report and recommendation adopted sub nom., In re Godfrey*,
   No.17-21631-Civ-COOKE/GOODMAN, 2018 WL 1859344 (S.D. Fla. Mar.
   15, 2018) .............................................................................................................12

*In re Ex Parte Application of Glob. Energy Horizons*,
   No. 5:15 Misc. 80078-PSG, 2015 U.S. Dist. LEXIS 37138, at *6 (N.D. Cal.
   Mar. 24, 2015).....................................................................................................12

*In re First Monolith Inc.*,
   No. 20 Misc. 735 (AT), 2021 U.S. Dist. LEXIS 1875 (S.D.N.Y. Feb. 1, 2021) ...................10

*In re Investbank PSC*,
   No. 20 Misc. 260 (AT), 2020 U.S. Dist. LEXIS 244597 (S.D.N.Y. Dec. 30,
   2020) .....................................................................................................................9

*In re JSC BTA Bank*,
   577 F. Supp. 3d 262 (S.D.N.Y. 2021)...........................................................12, 15

*In re Litasco SA for An Ord. to Take Discovery Pursuant to 28 USC 1782*,
   No. 23 Misc. 354 (AS), 2023 U.S. Dist. LEXIS 226108 (S.D.N.Y. Dec. 15,
   2023) ....................................................................................................................10

*In re Servicio Pan Americano*,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004)................................................................13

*In re Simetra Glob. Assets Ltd. & Richcroft Investments Ltd.*,
   No. 16-2389 (JLL) (JAD), 2016 U.S. Dist. LEXIS 68379 (D.N.J. May 25,
   2016) ....................................................................................................................12

*In re Vinmar Overseas, Ltd.*,
   No. 20 Misc. 277 (RA), 2020 U.S. Dist. LEXIS 145024 (S.D.N.Y. Aug. 12,
   2020) .....................................................................................................................9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)..........................................................2, 8, 9, 11, 13, 14

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018)...............................................................................8

*Kipperband v. Kipperband (In re Kipperband)*,
   24-2627, 2025 U.S. App. LEXIS 11883 (2d Cir. May 16, 2025).....................10, 13

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)......................................................................8, 10, 13

**STATUTES**

28 U.S.C. § 1782...................................................................................................................... *passim*

**OTHER AUTHORITIES**

F.R.C.P Rule 26(b)......................................................................................................................13

Petitioners Nikolai Kazakov ("Nikolai") and Vera Kazakova ("Vera") (collectively the "Petitioners" or the "Kazakovs") respectfully submit this Memorandum of Law in support of their Application and Petition (the "Application") for an Order, pursuant to 28 U.S.C. § 1782 ("Section 1782"), authorizing them to obtain certain limited discovery from Clearing House Payments Company L.L.C. ("CHIPS"), a New York-based private clearing house, in aid of their civil proceeding currently pending in the High Court of Justice, Business and Property Courts of England and Wales, Claim No. BL-2020-001050 (the "U.K. Proceeding"). This Application is supported by the Declaration of Craig Pollack, dated February 11, 2026 ("Pollack Dec.") and the Declaration of Thomas E. Butler, dated February 12, 2026 ("Butler Dec.") as well as the arguments set forth herein. The proposed order and the subpoena *duces tecum* (the "Subpoena") to be served on CHIPS are annexed as Exhibit A to the Butler Declaration.

## PRELIMINARY STATEMENT

Petitioners bring this Application pursuant to Section 1782 to obtain limited discovery from New York City-based payments clearing house CHIPS in support of Petitioners' civil litigation claims pending in the London, England. In July 2020, Loudmila Bourlakova ("Loudmila"), the estranged wife of Nikolai's business partner and Vera's brother, the late Oleg Bourlakov ("Oleg") brought the U.K. Proceeding , ultimately asserting various claims against Nikolai and Vera. In her papers, Loudmila denied the existence of a thirty-year partnership between Nikolai and Oleg, claimed that Oleg unilaterally transferred billions of assets outright to Loudmila and sought recovery of the same from Oleg, Nikolai and others.  Nikolai and Vera have since brought a counterclaim, seeking to recover billions of dollars of partnership assets (the "Partnership Assets") that were misappropriated by Loudmila along with her co-conspirators.

Critical to the counterclaim asserted in the U.K. Proceeding are the particulars of numerous U.S. dollar-denominated transactions that occurred through financial intermediaries pursuant to

which Loudmila and her co-conspirators misappropriated billions in Partnership Assets. Thus, by this Application, Nikolai and Vera seek to obtain information regarding the same, which is available only through CHIPS.

The Court should grant the Application. The Application meets the requirements of the two-part test set out by the Supreme Court to determine the propriety of a Section 1782 application. The same consists of a statutory test, as well as an analysis of certain "discretionary factors."  The statutory factors clearly have been met here.  First, it is undisputed that CHIPS "resides or is found" in this District, where it is headquartered and regularly conducts business. Moreover, the discovery sought by Petitioners is "for use in the foreign proceeding," given that it goes to a core issue within the U.K. Proceeding – the location and value of what Nikolai and Vera contend are stolen Partnership Assets. This information will assist in determining the quantum of the theft and the amount of the damages suffered by Petitioners. Given Petitioners' status as counterclaimants in the U.K. Proceeding, the discovery unquestionably is sought by "interested parties."

At the same time, each of the discretionary factors identified by the Supreme Court in the *Intel* case supports the discovery sought by Petitioners. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). The Application is limited, seeking only information and documents related to U.S. dollar-denominated transactions directly tied to the counterdefendants in the U.K. Proceeding and parties directly aligned with them. The Application seeks to obtain information present in New York but unavailable in the U.K. where the Proceeding is pending. In addition, there is every reason to believe that the English court would accept and consider evidence responsive to the Subpoena.

Finally, this Court has already ruled that Loudmila and her daughter, Veronica Bourlakova "Veronica") were entitled to obtain substantially similar discovery from CHIPS in support of their own claims in the U.K. Proceeding. *See* Exhibit 2 to Butler Declaration. Petitioners herein, who

have asserted a counterclaim in that Proceeding, certainly should be entitled to the same discovery[1].

In light of the above, Petitioners respectfully request that this Court grant Petitioners' Application authorizing service of the Subpoena on CHIPS.

## FACTUAL BACKGROUND[2]

### I.    THE PARTIES

Nikolai Kazakov. Nikolai is an individual who is a resident of Monaco.(Pollack Dec. ¶ 2 Ex. A ). Nikolai was the long-time business partners of Oleg and is entitled to 50% of the assets accumulated by him and Oleg over the course of their thirty-year partnership. Along with his wife, Vera, Nikolai is the universal legatee under Oleg's will that was operative at the time of his death in June 2021. Nikolai is a counterclaimant/litigant in the U.K. Proceeding. (Pollack Dec. ¶ 2 ).

Vera Kazakova. Vera is an individual who lives in Monaco. She is Nikolai's wife and the sister of the late Oleg.  Along with Nikolai, she is the universal legatee under Oleg's will. Vera is a counterclaimant/litigant in the U.K. Proceeding. (Pollack Dec. ¶  2).

CHIPS. CHIPS operates the Clearing House Interbank Payments System. The CHIPS® network is the largest private sector USD clearing and settlement system in the world, clearing and settling $1.9 trillion in domestic and international payments each business day. CHIPS has forty-two participants  and considers itself the private-sector counterpart to Fedwire. The Clearinghouse

---

[1]    As this Court previously held, it is not the role of this Court on this Application to assess the relative merits of the parties' positions in the underlying litigation. "[a] district court's focus in considering a request under § 1782 is not on the merits of the proposed claim, but on the movant's 'practical ability to inject the requested information into a foreign proceeding.'" *IJK Palm LLC v. Anholt Servs. USA, Inc*., 33 F.4th 669, 680 (2d Cir. 2022) (*quoting In re Accent Delight, 869 F.3d at 132; see BANOKA, S.à.r.l. v. Alvarez & Marsal Inc.*, No. 1:22-MC-182, 2024 U.S. Dist. LEXIS 51534, 2024 WL 1242994, at *7 (S.D.N.Y. Mar. 22, 2024) (holding discovery is "for use" in foreign proceeding despite "Petitioners' concession that they lacked sufficient evidence to adequately plead their proposed claims under English Law").

[2]    The factual background is taken from the annexed Declarations and the allegations set forth in the Counterclaim.

Interbank Payment System is owned by CHIPS, which is headquartered and regularly does business in this District.  (Butler Dec. ¶ 3, Ex. B).

## II.      THE PARTNERSHIP BETWEEN OLEG AND NIKOLAI

As set forth in the counterclaim in the U.K. Proceeding, in or about 1988, Nikolai and Oleg entered into a partnership, whereby they agreed that they would pursue a variety of business opportunities. Over the course of many years, Oleg and Nikolai built a number of successful businesses located in Russia and abroad. These businesses included Novoroscement, a leading producer of cement, and Burneftegaz, a leading gas exploration company. In 2007, Oleg and Nikolai sold Novoroscement for approximately $1.45 billion, and in 2014, they sold Burneftegaz for approximately $1 billion. (Pollack Dec. ¶¶ 5-7).  In the aftermath of these transactions, Oleg and Nikolai were informed that Russian legislation with respect to foreign exchange controls only allows certain assets to be withdrawn from Russia in three hypothetical situations, one of which was when the assets are transferred to a foreign account opened in the name of a spouse. (Pollack Dec. ¶ 2 Ex. A). They also were informed of a forthcoming major change of legislation, according to which interests owned by Russian tax citizens in offshore entities would become subject to certain taxes. (Pollack Dec. ¶ 2 Ex. A).   In accordance with these regulations, the proceeds of these transactions were transferred to accounts held or beneficially owned by Loudmila. (Pollack Dec. ¶ 2 Ex. A. ).  She thereafterheld the assets for the benefit of Oleg and his business partner, Nikolai.  (Pollack Dec. ¶ 2 Ex. A).

## III.     NIKOLAI DEMANDS HIS PART OF THE PARTNERS' FORTUNE

Oleg and Loudmila had two daughters, Veronica and Elena. Veronica is married to Greg Gliner. (Pollack Dec. ¶ 2 Ex. A).  In early 2018, Oleg's marriage to Loudmila came under strain. On or about April 5, 2018, Nikolai and Vera (Oleg's sister) met with Oleg, Loudmila, Veronica, and Elena in London, at which time Nikolai formally requested a return of the portion of his assets

being held for his benefit by Loudmila. During the April 5 meeting, Unbeknownst to Oleg or Nikolai, Veronica, along with Greg had formed a new family office. It was subsequently discovered that some offshore entities had been set up beginning in February 2018 in an apparent effort to lodge and hide some of the Partnership Assets. (Pollack Dec. ¶ 2 Ex. A).

Subsequently, Oleg's marriage to Loudmila continued to deteriorate. It would appear that this was due in part to the fact that Veronica and Elena, with the assistance of Greg, manipulated their mother and convinced her to attempt to assert full ownership over Oleg and Nikolai's assets. (Pollack Dec. ¶ 2 Ex. A). In a series of transactions, Loudmila transferred considerable assets held for the benefit of Nikolai and Oleg to various other accounts and entities in her name the names of her daughters, and the names of entities owned or controlled by Greg. Many of these transfers were made without the consent of Oleg or Nikolai, in an effort to prevent Nikolai and Oleg from accessing the funds or any information related to the funds. (Pollack Dec. ¶ 2 Ex. A).

## IV.    THE GLOBAL LITIGATION

Loudmila filed for divorce in Monaco in 2018. Subsequent to the filing of the divorce proceeding, a number of proceedings were filed in various jurisdictions to address the competing claims to these assets. These included additional criminal and civil proceedings in Monaco; civil and criminal proceedings in Switzerland; civil proceedings in London; civil proceedings in Cyprus, civil proceedings in Latvia; civil proceedings in Russia and civil proceedings in Miami, FL. (Butler Dec. ¶ 4). Indeed, among these proceedings was a criminal action in Monaco wherein Loudmila was accused of and indicted for money laundering and breach of trust, and her assets, along with those of Veronica and various companies, were frozen.  (Butler Dec. ¶ 4).

Notably, the litigation in Miami, which is pending in the Eleventh Judicial District was stayed by order dated April 17, 2025.  On December 31, 2025, the Third District Court of Appeal held that it had no jurisdiction to review that order. (Butler Dec. ¶ 8).

In June 2021, Oleg died at the age of 72. At the time of his death, Oleg's will left the entirety of his estate to Nikolai and Vera, his universal legatees. (Pollack Dec. ¶ 2 Ex. A).

## V.    THE U.K. PROCEEDING AND THE COUNTERCLAIMS

In July 2020, Loudmila initiated the U.K. Proceeding, seeking multiple forms of relief or alternative relief. Id. These included claims that the Partnership between Nikolai and Oleg never existed and claims for damages arising from what she claimed was a fraud perpetrated on her by Oleg, Nikolai, Vera and others.  (Pollack Dec. ¶  2 Ex. A).  Indeed, the essence of Loudmila's claim was that she was the sole owner of all of the assets after Oleg unilaterally and permanently transferred a substantial part of his assets to her sole control. Id. On January 18, 2024, Loudmila and Veronica applied to the U.K. Court for a worldwide freezing order against the Kazakovs, among others, preventing further transfers of assets in which they claimed an interest. Significantly, the Bourlakovas withdrew the application when it was revealed that much of the support for it was false and fraudulent. Indeed, it was subsequently revealed that the Bourlakovas' agents had engaged in a lengthy campaign of hacking and stealing the Kazakovs' emails including privileged communications between the Kazakovs and their attorneys.   (Butler Dec. ¶ 5 Ex.C).

On April 23, 2025, the Kazakovs filed their amended counterclaim in the U.K. Proceeding. (Pollack Dec. ¶ 2 ). Of relevance, the Kazakovs sought a declaration that a partnership existed between Oleg and Nikolai, as well as damages for the Bourlakovas' fraudulent theft and concealment of assets that belonged to the Partnership. The Kazakovs also brought claims arising from the Bourlakovas' campaign of hacking and otherwise breaching the Kazakovs' privilege. (Pollack Dec. ¶ 2, Ex. A).

## VI.    THE BOURLAKOVAS' 1782 APPLICATION

On or about February 20, 2024, Loudmila and Veronica brought an application in this Court requesting permission to serve a subpoena on CHIPS that would include substantial data

regarding transfers involving numerous individuals and entities purportedly connected to the Kazakovs. The Bourlakovas contended that the primary reason why they wanted the information was to support their prospective freezing order application in London; a secondary reason was to support their damages claim. Petitioners moved to intervene in that proceeding and to quash the subpoena. Petitioners argued, *inter alia*, that, given the acknowledgement that the freezing order application was premised on fraud, the Court should not lend assistance to the Bourlakovas. Petitioners also argued that the subpoena as drafted was overbroad and intrusive and was improper given the pendency of litigation in Miami. The motion to quash was denied and the subpoena was served on CHIPS, which subsequently produced documents in response. (Butler Dec. ¶ 6).

## VII.   THE DISCOVERY SOUGHT

Petitioners seek discovery from CHIPS in support of their claims in the U.K. Proceeding. CHIPS is a wire-transfer clearing house headquartered in this District that frequently acts as a clearing firm for U.S. dollar-denominated wire transfers between international banks. *See supra.* As a result, Petitioners seek limited documents and information from CHIPS concerning any assets, accounts, or transfers to or from the counter-defendants in the U.K. Proceedings or various related entities and individuals. *See* Butler Dec. at Exhibit A. Documents responsive to the Subpoena are highly relevant to the U.K. Proceeding for several reasons, including tracing and tracking the assets that belonged to the Partnership to assist with quantifying the Petitioners' claims in the U.K. Proceedings for damages in respect of the misappropriation of the assets and for the purpose of identifying wrongful transfers that are at the heart of Petitioners' claims.

## **ARGUMENT**

## I.   LEGAL STANDARD

Section 1782 was enacted to enable United States courts to provide assistance in the form of discovery for use in foreign proceedings. The statute authorizes this Court to order discovery

for use in a foreign proceeding when certain statutory and discretionary factors are satisfied. *Intel Corp.*, 542 U.S. at 246. In relevant part, the statute states that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782.

"To obtain § 1782 discovery, an applicant must satisfy three statutory prerequisites: (1) the person or entity from whom discovery is sought 'resides' or is 'found' in the district where the application is made; (2) the requested material is 'for use' in a foreign proceeding; and (3) the application is made by a foreign or international tribunal or any interested person." *In re BonSens.org*, 95 F.4th 75, 79 (2d Cir. 2024)(citation omitted). "Once a district court is assured that it has jurisdiction over the petition, it may grant discovery under § 1782 in its discretion." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018)(citing *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015))(internal quotation marks omitted).

If the three statutory requirements are satisfied, courts then consider four discretionary factors in deciding whether to grant a Section 1782 application. The "discretionary factors" are (1) whether discovery is sought from a participant in the foreign proceeding who is accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the tribunal to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80-81 (2d Cir. 2012) (*citing Intel*, 542 U.S. at 264-65).

Both the Supreme Court and the Second Circuit have acknowledged that Congress intended that the statute be interpreted broadly, to provide liberal discovery in aid of foreign proceedings. *See Intel,* 542 U.S. at 247-48; *Brandi-Dohrn,* 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability") (citation and quotations omitted); *In re Edelman,* 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . ."); *In re del Valle Ruiz,* 939 F.3d 520, 528 (2d Cir. 2018).

Here, the Application meets each of the statutory requirements, and the discretionary factors strongly support granting the Petition.

## II.    THE STATUTORY REQUIREMENTS OF SECTION 1782 ARE SATISFIED

Here, the Application satisfies the three statutory threshold requirements of Section 1782: (1) CHIPS "resides" and is "found" in the Southern District of New York; (2) the requested information is for "use in a foreign proceeding"; and (3) Petitioners are "interested persons" as they are litigants in the U.K. Proceeding.

### A.    CHIPS Resides in this District

Numerous courts, including this one in connection with the Bourlakovas' Application, have found that CHIPS both "resides" and is "found" in New York, New York where its headquarters are located and its business is operated. *In re Bourlakova,* 24-MC-71, 2024 U.S. Dist. LEXIS 212324 (S.D.N.Y. Nov. 20, 2024). As a result, applications for Section 1782 discovery from CHIPS are routinely granted in this District. *See e.g.*, *Ecoprivate Bus. Ltd. v. The Clearing House Payments Co. L.L.C.*, No. 23 Misc. 232 (KPF), 2023 U.S. Dist. LEXIS 131156, at *6 (S.D.N.Y. July 28, 2023); *In re Vinmar Overseas, Ltd.*, No. 20 Misc. 277 (RA), 2020 U.S. Dist. LEXIS 145024, at *2 (S.D.N.Y. Aug. 12, 2020) (granting 1782 application for discovery from CHIPS); *In re Byrne*, No. 23 Misc. 048 (VEC), 2023 U.S. Dist. LEXIS 75843, at *11 (S.D.N.Y. May 2, 2023); *In re Investbank PSC*, No. 20 Misc. 260 (AT), 2020 U.S. Dist. LEXIS

244597, at *3 (S.D.N.Y. Dec. 30, 2020); *In re First Monolith Inc.*, No. 20 Misc. 735 (AT), 2021 U.S. Dist. LEXIS 1875, at *3 (S.D.N.Y. Feb. 1, 2021) (same); *In re Litasco SA for An Ord. to Take Discovery Pursuant to 28 USC 1782,* No. 23 Misc. 354 (AS), 2023 U.S. Dist. LEXIS 226108, at *2-3 (S.D.N.Y. Dec. 15, 2023).

> **B.    The Discovery Sought is "For Use" in a Foreign Proceeding**

The "for use" statutory prerequisite assesses "the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). To satisfy the "for use" requirement, the requested discovery must "be employed with some advantage or serve some use in the proceeding." *Id.* at 132; *see also Mees*, 793 F.3d at 295 ("A § 1782 applicant satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding"). Discovery is considered "for use" in a foreign proceeding where there is an ongoing foreign proceeding, which is adjudicative in nature. *Euromepa S.A. v. R. Esmerian Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). For the "for use" requirement, records need only be "minimally relevant" to the subject matter of the foreign litigation and do not need to rise to admissible evidence. *Kipperband v. Kipperband (In re Kipperband)*, 24-2627, 2025 U.S. App. LEXIS 11883, at *3 (2d Cir. May 16, 2025).

Here, the U.K. Proceeding is unquestionably a judicial proceeding pending before the High Court of Justice, Business and Property Courts of England and Wales wherein that Court ultimately will  adjudicate and resolve the claims of the parties. The materials sought will be utilized in the U.K. Proceeding, insofar as they bear directly on the various facts in dispute, including the location and value of Partnership Assets that are sought as part of the English counterclaim. This actually was confirmed by this Court's holding in the Bourlakovas' Application, where it found "Because bank transfers among Mr. Bourlakov, the Kazakovs, and various entities they control are pertinent

to the Bourlakovas' ability to prove their allegations of asset concealment and misappropriation in the U.K. Proceeding, the Court concludes that the discovery is for use in a foreign proceeding." *In re Bourlakova*, 2024 U.S. Dist. LEXIS 212324, at *8. Similarly, transfers involving the Bourlakovas and entities controlled by them are pertinent to the Kazakovs' ability to prove their counterclaim for asset misappropriation and concealment.

### C.    The Petitioners Are Interested Persons Under Section 1782

As litigants in the U.K. Proceeding, Petitioners are by definition "interested persons" within the meaning of Section 1782. *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . ."). As such, Petitioners satisfy the third statutory requirement.

## III.    *INTEL*'S DISCRETIONARY FACTORS FAVOR GRANTING THE PETITION

If the statutory requirements of Section 1782 are met, courts consider the four discretionary factors set forth by the Supreme Court in *Intel*. *See Brandi-Dohrn*, 673 F.3d at 80-81. Here, each of the discretionary factors weigh in favor of granting the requested discovery.

### A.    CHIPS Is Not a Party to the U.K. Proceeding

As to the first factor, because CHIPS is not a party to the U.K. Proceeding, any potential evidence it may have in the United States "may be unobtainable absent § 1782." *Intel*, 542 U.S. at 264; *see also In re 28 U.S.C. 1782,* 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (granting petition for discovery and noting that petitioner's "status as a non-party . . . weighs in favor of granting [the] application"). The first *Intel* factor thus weighs in favor of granting the Application.

### B.    The U.K. Court Will Be Receptive to the Discovery

The second *Intel* factor similarly supports granting Petitioners' request. That factor looks to the nature of the foreign tribunal, and the receptivity of the foreign court to U.S. judicial assistance. *Intel*, 542 U.S. at 264-265. United States courts, including this Court, have consistently allowed participants in U.K. judicial proceedings to obtain discovery under Section

1782. *See, e.g., In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia, No. 23-MC-00208 (JGLC)(GS)*, 23 Misc. 208 (JGLC) (GS), 2024 U.S. Dist. LEXIS 24538, at *29 (S.D.N.Y. Jan. 18, 2024), report and recommendation adopted, 2024 U.S. Dist. LEXIS 24095 (S.D.N.Y. Feb. 12, 2024); *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 267 (S.D.N.Y. 2021) (granting § 1782 application for discovery in support of action pending before the High Court of England and Wales); *In re Abraaj Inv. Mgmt. Ltd.*, No. 20 Misc. 229 (VSB), 2023 U.S. Dist. LEXIS 54296, at *1 (S.D.N.Y. Mar. 29, 2023) (granting Section 1782 application in support of fraudulent transfer claims pending in the Grand Court of the Caymans Islands); *In re Deposit Guarantee Fund (Ukraine)*, No. 21 Misc. 203 (AT), 2021 U.S. Dist. LEXIS 76715, at *5 (S.D.N.Y. Apr. 21, 2021) (granting Section 1782 application for discovery in support of action pending in the U.K.).

In addition, several U.S. district courts have expressly pointed out that there is no indication that English courts would reject evidence obtained pursuant to Section 1782 or that English courts are receptive to such discovery. *In re Simetra Glob. Assets Ltd. & Richcroft Investments Ltd.*, No. 16-2389 (JLL) (JAD), 2016 U.S. Dist. LEXIS 68379, at *11 (D.N.J. May 25, 2016) ("[T]here is no indication that the English Court would reject the evidence that Petitioners seek to elicit. . . . ."); *In re Emergency Ex Parte Application of Godfrey*, No.17-21631-CV-COOKE-GOODMAN, 2018 WL 1863749, at *28 (S.D. Fla. Feb. 22, 2018), *report and recommendation adopted sub nom., In re Godfrey*, No.17-21631-Civ-COOKE/GOODMAN, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018) ("Some U.S. district courts have also recognized that English courts are generally receptive to § 1782 discovery") (citation omitted); *In re Ex Parte Application of Glob. Energy Horizons*, No. 5:15 Misc. 80078-PSG, 2015 U.S. Dist. LEXIS 37138, at *6 (N.D. Cal. Mar. 24, 2015) ("There is no authority suggesting the English government would be hostile to or otherwise reject discovery obtained through a Section 1782 subpoena.").

### C.    The Discovery Sought by Petitioners Would Not Circumvent the U.K. Judicial Process

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel,* 542 U.S. at 265. In the Second Circuit, there is no requirement that a petitioner seeking discovery under § 1782 first attempt to obtain the requested information via the foreign tribunal. *Mees*, 793 F.3d at 303 (Section 1782 "contains no foreign-discoverability requirement"). Nor must an applicant wait until the evidentiary stage of the foreign proceeding. *In re Servicio Pan Americano*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("Section 1782 may be invoked even where foreign legal proceedings are not even underway . . . .").

Here, the Application does not attempt to circumvent any public policy in the U.K. or to violate any rules regarding proof-gathering in the U.K. Proceeding. Instead, the Petitioners seek information about dollar-denominated transfers of assets to which they claim a direct interest. This information is relevant to the U.K. Proceeding and cannot be obtained within that Proceeding.  It is also information that is substantially similar to the information that the Bourlakovas previously obtained through their own Section 1782 proceeding.

### D.    The Discovery Sought Is Narrowly Tailored

The fourth *Intel* factor also weighs in favor of granting the Application. That factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel,* 542 U.S. at 265. As is so with all federal discovery, the proper scope of discovery under § 1782 is governed by Rule 26(b). *Mees*, 793 F.3d at 302; *In re 28 U.S.C. 1782*, 249 F.R.D. at 106; *Kipperband*, 2025 U.S. App. LEXIS 11883 at *5.

Here, Petitioners' Subpoena is narrowly tailored to the claims at issue. Petitioners seek narrow and targeted discovery concerning individuals and entities that they have reason to believe were involved in transfers of the Partnership Assets. As this Court found on the Bourlakovas'

Application "The scope of discovery, while broad, is not unduly so, given that the underlying U.K. Proceeding names thirteen defendants, involves high-net-worth individuals who own numerous companies, and alleges wide-ranging claims of asset misappropriation." *In re Bourlakova*, 2024 U.S. Dist. LEXIS 212324, at \*12-13. What Petitioners seek here is far narrower than what the Bourlakovas sought (and obtained) in connection with similar claims in the same litigation. Petitioners seek discovery from thirty-three individuals and entities – significantly less than the number sought by the Bourlakovas. This satisfies the fourth *Intel* prong.

      **E.**    **The Decision on the Bourlakovas' Application**
                  **Mandates Grant of the Petition**

The Court's granting of the Bourlakovas' Section 1782 Application (over Petitioners' objection) mandates granting this Petition.

Petitioners contested the Bourlakovas' Application on various grounds, none of which are applicable here. Specifically, Petitioners challenged the Bourlakovas' Application on the ground that 1) the Bourlakovas' misconduct in connection with their freezing order should preclude the use of Section 1782; the 2) the application was an attempt to circumvent discovery in the then-active Florida litigation; and 3) the subpoena was unduly overbroad and intrusive. Here, the Kazakovs have not been accused of the gross misconduct engaged in by the Bourlakovas; the Florida litigation is now stayed; and the Subpoena is considerably narrower than the one served by the Bourlakovas, despite the fact that both groups of parties are asserting similar claims – that the other has improperly seized and concealed assets in which they have an interest. In any event, this Court and the Second Circuit rejected those arguments. Moreover, once the Bourlakovas dropped their freezing order application, which was the lynchpin of their original 1782 application, the only basis that remained was the pendency of claims that assets had been transferred fraudulently. These mirrors the counterclaims asserted by the Kazakovs and the basis for which

they seek discovery through their Petition. Thus, for the same reasons that this Court granted the Bourlakovas' Application, it should do the same here.

## IV.    THE COURT SHOULD GRANT PETITIONERS' APPLICATION *EX PARTE*

The Court should grant the Application *ex parte* because doing so would cause no prejudice to CHIPS as a matter of law. "Because the respondents will have the opportunity to challenge [the] subpoena[] once served (including but not limited to a challenge as to whether section 1782 assistance should be afforded at all)" courts frequently grant Section 1782 requests *ex parte*. *In re JSC BTA Bank*, 577 F. Supp. 3d at 268. Here, CHIPS would not be prejudiced should the Court grant the Application *ex parte* because CHIPS would have the opportunity to challenge the Subpoena after service. In addition, when this Court granted the Bourlakovas' Application, it did so *ex parte*.

## V.    THE COURT SHOULD HOLD THAT THE U.K. SHOULD DETERMINE THE EXTENT TO WHICH THE DOCUMENTS DISCLOSED SHOULD BE SHARED WITH THE BOURLAKOVAS

Finally, this Court should also direct that any claim that the Bourlakovas may have to receiving any documents produced in response to the Subpoena be determined by the English Court. By order dated December 20, 2024, this Court held, in response to the Kazakovs' motion to compel production of the documents to them, that any further production was to be addressed by the U.K. court. CITE. This holding was upheld by the Second Circuit. *In re Bourlakova*, 24-3187, 25-49, 2025 U.S. App. LEXIS 15344 (2d Cir. June 23, 2025). Consistent with this Court's prior determination, it should likewise allow the U.K. Court to determine the scope of any further production of materials produced by CHIPS to the Kazakovs.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court (a) grant the Application and Petition For an Order to Conduct Discovery; (b) enter the Proposed Order attached

to the Butler Declaration as Exhibit 1; (c) order that Petitioners may proceed *ex parte*, (d) authorize Petitioners, pursuant to 28 U.S.C. § 1782, to serve the Subpoena attached to the Butler Declaration as Exhibit A to the Proposed Order; (e) order that any further production to the Bourlakovas be determined by the U.K. court; and (f) grant such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      February 16, 2026

WHITE AND WILLIAMS LLP

Thomas E. Butler
Nicole A. Sullivan
810 Seventh Avenue – Suite 500
New York, NY 10036
(212) 714-3070
butlert@whiteandwilliams.com
sullivann@whiteandwilliams.com

*Attorneys for Petitioners*

16