UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE APPLICATION OF NIKOLAI KAZAKOV AND VERA KASAKOVA<br><br>FOR AN ORDER SEEKING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | : | 26-MC-00066 (JAV)<br><br>ORDER |

JEANNETTE A. VARGAS, United States District Judge:

Before the Court are two motions: (i) an application by Nikolai Kazakov and Vera Kazakova (the "Kazakovs" or "Petitioners"), seeking an *ex parte* order authorizing discovery for use in a foreign proceeding from Clearing House Payments Company L.L.C. ("CHIPS") pursuant to 28 U.S.C. § 1782, ECF No. 1 (the "Application"); and (ii) a motion to intervene by Loudmila and Veronica Bourlakova (the "Bourlakovas"), in opposition to the application, ECF No. 9. The Bourlakovas argue that the proposed discovery is not "for use" in the foreign proceedings in the United Kingdom and is furthermore an attempt to circumvent restrictions on discovery in pending actions in the United Kingdom and Florida. ECF No. 10 ("Bourlakova Mem.") at 12-13. For the reasons stated below, the motion to intervene is **GRANTED**, and the Application by the Kazakovs is **GRANTED**.

## BACKGROUND

The instant dispute originates from the divorce of Oleg Bourlakov and Loudmila Bourlakova in 2018. ECF No. 11-11 ("McMahon Decl., Ex. 11") at 2. Following the breakdown in relations between the two, Oleg claimed that he and his brother-in-law, Nikolai Kasakov, were long-time business partners, and that they had orally agreed to

share equally in all profits from their common business ventures in Russia and abroad. ECF No. 4 ("Pollack Decl."), ¶ 3. In particular, Petitioners represent that in 2007, when Oleg sold Novoroscement, a producer of cement, for approximately $1.45 billion, and in 2014, when he sold Burneftegaz, a gas exploration company, for approximately $1 billion, Nikolai was Oleg's partner with respect to those businesses, and thus was entitled to half the proceeds. *Id.*, ¶¶ 5-7.

Petitioners allege that, after Nikolai and Oleg were informed that Russian legislation with respect to foreign exchange controls only allows certain assets to be withdrawn from Russia when, *inter alia*, the assets are transferred to a foreign account opened in the name of a spouse, the proceeds of these transactions were transferred to accounts held or beneficially owned by Loudmila. *Id.,* ¶ 2 & Ex. A. She thereafter allegedly held the assets for the benefit of both Oleg and Nikolai. *Id.*, Ex.A. Petitioners assert that, upon the dissolution of her marriage to Oleg, Loudmila refused to return Nikolai's share. *Id.*, ¶¶ 8-11.

The Bourlakovas, in turn, contend that no such partnership ever existed. Loudmila asserts that, towards the end of 2017 and beginning of 2018, she discovered that Oleg was engaging in an extramarital affair, and he eventually had another child with his new partner. ECF No. 11 ("McMahon Decl."), Ex. 11 at 2. Loudmila filed for divorce in Monaco in December of 2018. *Id.* According to the Bourlakovas, the partnership was a sham invented by Oleg after Loudmila commenced divorce proceedings, in order to prevent Loudmila from claiming her share of the marital assets. McMahon Decl., ¶ 15 n.1.

### A. The English Action

The Bourlakovas commenced an action in the High Court of England and Wales, *Bourlakova v. Kazakov*, Claim No. BL-2020-001050 (the "English Action") in July 2020. McMahon Decl., ¶ 4. In that proceeding, the Bourlakovas seek damages caused to Loudmila by the fraud allegedly perpetrated by Oleg and Nikolai and a declaration that no partnership agreement exists or ever existed between Oleg and Nikolai. *Id.* The Kazakovs subsequently brought counterclaims in the same action, arguing that assets arising from Nikolai and Oleg's partnership were misappropriated by the Bourlakovas. *Id.*,¶ 13.; *see also* ECF No. 4-1 The Kazakovs seek, *inter alia,* declaratory relief; a return of the partnership assets (*in specie* or their value), damages; reversal of any unjust enrichment based upon receipt of the transferred assets, including the fruits of such unjust enrichment; and an order requiring an accounting of Loudmila Bourlakova's management of the assets, including everything done, disposed of and received, along with an order for the payment of any sums found to be due upon the taking of such an account. *See* ECF No. 4-1; ECF No. 22-1 at 4-5.

On April 24, 2026, the judge presiding over the English Action issued a decision on an application by the Kazakovs to expand the scope of discovery to include disclosures regarding how various of the disputed assets and proceeds have been held, what consideration was provided for the transfer of any of those assets, and the extent to which the Bourlakovas have been enriched by those assets. ECF No. 22-1 at 11-12.

In doing so, the judge found that the Kazakovs had failed to timely seek these disclosures, and that greatly expanding the scope of discovery at this late date would result in delay to the October 2027 trial date. *Id.* at 23-25. Concluding that "such an

exercise [cannot] sensibly be undertaken before, and in good time for, trial," the English court therefore held that it would first proceed with trial with respect to the existence of the partnership, and then if the Kazakovs were to prevail at trial on liability, an accounting and consideration of damages would follow. *Id.* at 25-26.

**B. The Global Estate Actions**

Upon Oleg's death in June 2021, estate actions ("Global Estate Actions") began in several countries, in which both the Bourlakovas and the Kazakovs claim to be Oleg's heirs. McMahon Decl., Ex. 11 at 5-6. The Bourlakovas point to a professionally prepared, witnessed and notarized will from 2004. *Id.* The Kazakovs argue that a more recent holographic will, designating them as "universal legatees," designates them as heirs. *Id.* at 6. These actions are ongoing within Monaco, Russia, and Latvia. *Id.* at 5-6.

**C. The Florida Action**

On November 29, 2021, the daughters of Oleg and Loudmila, Elena Bourlakova and Veronica Bourlakova, filed a lawsuit in Florida state court, *Bourlakova v. Landau*, Case No. 2021-015928-CA-01 (Fla. 11th Cir.). McMahon Decl., Ex. 11 at 7. That suit arose from a Florida trust created by Oleg in November 2017 (the "2017 Trust") for the benefit of his minor and future grandchildren. *Id.* at 3. A multi-million dollar condominium on Fisher Island in Miami-Date Country was purchased for the 2017 Trust with funds from Edelweiss Investments, Inc. ("Edelweiss"). *Id.* The Bourlakovas alleged that Veronica was the owner of Edelweiss. *Id.*

According to the complaint filed in the Florida action, in July 2020, Oleg settled a new trust, naming the Kazakovs as the primary beneficiaries, and then had the

trustee of the 2017 Trust transfer the Fisher Island property to the newly-created trust. *Id.* The Bourlakovas asserted claims for breach of fiduciary duty, civil theft and fraud, and sought the recovery of the 2017 Trust assets. *Id.*

The Kazakovs filed counterclaims in the Florida suit against, *inter alia*, Veronica, Loudmila and Elena, raising foreign-law based claims asserting that Nikolai is entitled to half of the disputed assets based upon the oral partnership agreement, and that the Kazakovs are entitled to Oleg's assets as the universal legatees of his will. *Id.* at 8-9. In January 2023, Veronica initiated a second lawsuit in Florida against the Kazakovs, seeking to establish that she is rightful owner of Edelweiss. *Id.* at 9. The Kazakovs again filed counterclaims against Veronica in that suit, substantially identical to the counterclaims asserted in the initial Florida suit. *Id.* at 9-10.

The presiding judge ultimately stayed both Florida actions on comity grounds. *See generally id.* The court determined that the Kazakovs' counterclaims were substantially the same as their counterclaims in the English Action, the English Action and the Global Estate Proceedings were filed first, and "resolution of those first-filed proceedings will resolve 'many' (if not all) of the core material issues in these later Florida actions (such as the existence of an oral partnership between Oleg and Nikolai, the ownership of Edelweiss, and the numerous estate issues presented by the Kazakovs' estate-based claims)." *Id.* at 13.

**D. Requested Discovery**

CHIPS is the largest private sector United States dollar wire-transfer clearing and settlement system in the world. ECF No. 3-2. The Kazakovs seek from CHIPS

"[a]ll [d]ocuments and [c]ommunications . . . regarding transfers or settlement payments made by or to or otherwise concerning or referencing" Loudmila, Elena, Veronica, Loudmila's husband, and two other individuals, as well as twenty-seven entities from January 1, 2018 onward. ECF No. 3-1 ("Butler Decl., Ex. A") at 6-8.

**E. Motion to Intervene**

On March 23, 2026, the Bourlakovas filed a motion to intervene pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure to oppose the Application. ECF No. 9. The Bourlakovas claim that they have standing to challenge the issuance of the Section 1782 application or that, in the alternative, the Court should exercise its broad discretion to permit intervention. Bourlakova Mem. at 10-11. The Bourlakovas further ask that the Court deny the Application because it fails to meet the statutory requirement for discovery "to be for use in a foreign proceeding" and circumvents foreign proof-gathering restrictions. *Id.* at 12-13.

## DISCUSSION

**A. Intervention as of Right**

"On timely motion, the Court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action[] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). Under Rule 24(a)(2), intervention as of right is granted when all four of the following conditions are met:

(1) the motion is timely;

> (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action;
>
> (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and
>
> (4) the applicant's interest is not adequately represented by the other parties.

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). "Failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006) (cleaned up); *accord Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).

**1. Timeliness**

The Bourlakovas satisfy the first prong of the Rule 24(a)(2) test. Factors to consider in determining timeliness include:

> (a) the length of time the applicant knew or should have known of [its] interest before making the motion;
>
> (b) prejudice to existing parties resulting from the applicant's delay;
>
> (c) prejudice to [the] applicant if the motion is denied; and
>
> (d) [the] presence of unusual circumstances militating for or against a finding of timeliness.

The Kazakovs filed their application on February 16, 2026. Application. The Bourlakovas filed their Motion to Intervene on March 23, 2026. ECF No. 9. The Bourlakovas assert that they were not previously notified of the Kazakovs' application. Bourlakova Mem. at 10. Regardless of whether the assertion is true, since the

Bourlakovas responded within thirty-five days—and in any event, prior to any final judgment—there was no undue delay.

**2. Interest**

"Under Rule 24(a)(2), the proposed intervenor must have a 'direct, substantial, and legally protectable' interest in the subject matter of the action." *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999) (quoting *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). In other words, "intervention cannot be used as a means to inject collateral issues into an existing action." *Id.* (cleaned up).

Here, the Bourlakovas have a direct, substantial, and legally protectable interest in the records at the heart of this action: documents and communications, including and regarding wire transfers made by the Bourlakovas and others. Butler Decl., Ex. A at 2-3. This information is sought precisely because the Kazakovs intend to use it in the Global Proceedings against the Bourlakovas. It is well-established that in Section 1782 cases, "parties against whom the requested information will be used" have a legally protectable interest sufficient to grant standing to object to the issuance of a subpoena. *See, e.g.*, *Application of Sarrio*, 119 F.3d 143, 148 (2d Cir. 1997).

**3. Impact of Disposition**

Without intervention, "disposing of th[is] action may as a practical matter impair or impede [the Bourlakovas'] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). District Judge J. Paul Oetken reached a similar conclusion when granting the Kazakovs' motion to intervene in a substantially similar Section 1782 application brought by the Bourlakovas. *See In re Bourlakova,* 24-MC-71 (JPO), 2024 WL

4839047 at *2 (S.D.N.Y Nov. 20, 2024). There, the Bourlakovas requested similar records from the Kazakovs for largely the same purposes, as part of the Global Proceedings. That court granted the motion to intervene on the grounds that "the Bourlakovas intend to use the requested discovery in the U.K. Proceeding against the Kazakovs[.]" *Id.* Both the interests of and potential impact on the moving party were clear there, as they are here.

### 4. Adequate Representation

Although there are several other parties in the Global Proceedings, no others have made appearances or moved to intervene in the instant action. Therefore, it can hardly be argued that the Bourlakovas are otherwise represented here. Accordingly, the Bourlakovas have satisfied all requirements for their motion to intervene as of right.

## B. Permissive Intervention

"When considering an application for permissive intervention, '[t]he court considers substantially the same factors' as when it considers intervention as of right under Rule 24(a)(2)." *Girard St. Inv. Holdings LLC v. Petroleos de Venezeula, S.A.*, No. 23-CV-10772 (JSR), 2024 WL 4556124, at *1 (S.D.N.Y. Oct. 23, 2024) (quoting *"R" Best Produce*, 467 F.3d at 240)). In the context of permissive intervention, however, "district courts in the Second Circuit have recognized that the four factors should be considered as a whole, rather than focusing narrowly on any one of the criteria, and that application of the factors is flexible and discretionary." *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of New York*, No. 19-CV-11285 (KMK), 2020 WL 5658703, at *5 (S.D.N.Y. Sep. 23, 2020) (cleaned up). The court also "must

consider whether granting permissive intervention will unduly delay or prejudice the adjudication of the rights of the existing parties." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (cleaned up); *see* Fed. R. Civ. P. 24(b)(3).

Even if the Bourlakovas had not satisfied the requirements to intervene as of right, the Court would nonetheless grant the motion to intervene under Rule 24(b). The Bourlakovas clearly have a claim or defense that shares a common question of law or fact with the main action. Moreover, permitting their permissive intervention will not "unduly delay or prejudice the adjudication of the rights of the existing parties." *In re Holocaust Victim Assets Litig.*, 225 F.3d at 202 (cleaned up). The Court now turns to the merits of the Kazakovs' Section 1782 application.

**C. Section 1782**

Section 1782(a) authorizes a district court to order discovery for use in foreign proceedings. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Before granting an application pursuant to Section 1782, a court must find that three statutory requirements are satisfied. First, that "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made. Second, that the discovery be for use in a proceeding before a foreign tribunal. Third, that the application be made by a foreign or international tribunal or any interested person." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015) (cleaned up).

If those requirements are met, Section 1782 "authorizes, but does not require, a federal district court" to grant the application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In determining whether to exercise that discretion, a

district court should consider: (1) whether the person from whom discovery is sought is participating in the foreign proceeding; (2) the nature of the foreign tribunal and its receptiveness to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *See id.* at 264-65.

District courts may grant applications made pursuant to § 1782 *ex parte*. "The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak,* 486 Fed. App'x 215, 217 (2d Cir. 2002); *see also In re FourWorld Event Opportunities Fund, L.P.*, No. 22 MC 316 (KPF), 2022 WL 17156111, at *3 (S.D.N.Y. Nov. 21, 2022). Upon the granting of the Application, the Respondent will have ample opportunity to object and be heard.

**1. Statutory Requirements**

The Court finds that the Application satisfies the three statutory requirements. First, Respondent "resides" or "is found" in the Southern District of New York because CHIPS is headquartered in Manhattan. Butler Decl., Ex. A at 2. *See In re Vinmar Overseas, Ltd.*, No. 20-MC-277 (RA), 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12, 2020); *In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 18-MC-00047 (PAC), 2018 WL 895675, at *2 (S.D.N.Y. Feb. 14, 2018).

Second, Petitioners have demonstrated that the requested discovery "will be employed with some advantage or serve some use in the [foreign] proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). The "of use" requirement

does not impose a high bar. "The applicant need not have a claim for relief in the foreign proceeding, nor must the information sought be necessary to the applicant's case." *In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, No. 24-MC-119 (LJL), 2024 WL 4169550, at *4 (S.D.N.Y. Sept. 12, 2024). It is enough that the evidence be at least "minimally relevant" to the claims at issue, and that the applicant has the "practical ability . . . to place a beneficial document—or the information it contains—before a foreign tribunal." *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024). Indeed, the foreign proceeding itself need not even be pending or imminent, so long as it is within "reasonable contemplation." *Intel*, 542 U.S. at 259.

The Kazakovs' principal stated use for the requested discovery is "determining the quantum of the theft and the amount of the damages suffered by Petitioners." ECF No. 5 ("Kazakov Mem.") at 2. As the Kazakovs' claims in the English Action include a request for an account, a return of stolen assets *in specie*, as well as damages for gains earned from such assets as part of an unjust enrichment claim, such evidence is plainly of use to any determination of damages and potential relief with respect to their counterclaims.

In opposing the Application, the Bourlakovas rely on caselaw discussing whether Section 1782 permits asset tracing for the purpose of enforcing a judgment. Bourlakova Mem. at 12-13. In *Ativos,* for example, the district court denied asset tracing discovery for purpose of judgment enforcement, where no judgment had been obtained and the existence of a future enforcement proceeding was entirely speculative. 2024 WL 4169550, at *8-9. Yet this argument conflates discovery taken for the purpose of identifying assets that could be used to satisfy a future judgment,

which may be impermissible when no judgment has yet been obtained and no judgment enforcement action is reasonably contemplated, and discovery relevant to a determination of the quantum of damages and the nature of the relief that could be obtained in a judgment in a pending action. The Bourlakovas have identified no precedent that holds that the latter species of discovery fails to satisfy the "of use" statutory requirement. *See In re Ex Parte Shagang Shipping Co.*, No. 14-MC-0053 (RWS), 2014 WL 1744264, at *2 (S.D.N.Y. Apr. 28, 2014) (holding that discovery related to damages calculation satisfied statutory Section 1782 factors).

The asset transfer information sought in the present Application is also "pertinent to the Kazakovs' ability to prove their counterclaim for asset misappropriation and concealment." Kazakov Mem. at 11. Notably, Judge Oetken authorized the Bourlakovas to take substantially similar discovery of CHIPS records on this exact theory: "Because bank transfers among Mr. Bourlakov, the Kazakovs, and various entities they control are pertinent to the Bourlakovas' ability to prove their allegations of asset concealment and misappropriation in the U.K. Proceeding, the Court concludes that the discovery is for use in a foreign proceeding." *In re Bourlakova,* 2024 WL 4839047 at *3. The Kazakovs have thus established that the requested discovery would be of use in a foreign proceeding.

Third, the Kazakovs are "interested persons" under the statute, as they are parties to the Global Proceedings. *See In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (A party to the foreign proceeding is an "interested person" under Section 1782). The statutory factors have therefore been met.

**2. Discretionary Factors**

The four discretionary *Intel* factors also weigh in favor of granting the Application. *See Intel*, 542 U.S. at 264-65. First, Respondents are not participants in the foreign proceeding. *See Gorsoan Ltd. v. Bullock*, 652 Fed. App'x 7, 9 (2d Cir. 2016) (Respondents are "not parties to the [foreign] proceedings, and so the first *Intel* factor weighs in favor of discovery.").

Second, for these purposes, the Court can conclude that the English courts would likely be receptive to this form of U.S. judicial assistance because there appears to be no "authoritative proof" otherwise. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (a district court "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," such as proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures"); *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, No. 23-MC-208 (JGLC) (GS), 2024 WL 555780, at *11 (S.D.N.Y. Jan. 18, 2024), *report and recommendation adopted sub nom. In re BM Brazil 1 Fundo De Investimento EM Participacoes Multistrategia*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024) ("Courts in this District applying the second *Intel* factor routinely find that courts in the United Kingdom are receptive to Section 1782 discovery." (cleaned up)).

Third, the Application does not constitute an attempt to circumvent foreign evidence-gathering rules or other policies of a foreign country or the United States. This *Intel* factor concerns whether the Application runs afoul of foreign "rules akin to privileges that *prohibit* the acquisition or use of certain materials," not "rules that *fail*

*to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015); *see also In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) ("We have rejected any requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding."). A court should not deny discovery pursuant to Section 1782 "solely because such discovery is unavailable in the foreign court." *Mees*, 793 F.3d at 303.

The Bourlakovas contend that Petitioners seek discovery for use in the Florida litigation and English Action in contravention of decisions by the presiding judges. Bourlakova Mem. at 13-17. This argument is unconvincing.

The Court begins with the Florida actions. The Bourlakovas suggest that Petitioners seek to "side-step the discovery limitations of the Florida litigation" by pursuing discovery in this matter that could not be pursued in that case. *Id.* at 15. Yet there is no contention that the Florida court ever issued an order prohibiting the type of discovery sought here. Rather, that action was stayed in its entirety as a matter of comity, to permit adjudication of these issues in the English Action and the Global Estate Proceedings. Seeking discovery for use in the English Action is entirely consistent with the Florida court's comity stay.

The Court similarly does not view the requested discovery as contravening the English court's April 24, 2026 order denying the Kazakovs' request to take damages-related discovery from the party claimants until after the trial on liability. The decision makes clear that it was largely based upon the Kazakovs' delay in seeking

such discovery, the complexities involved in pursuing an accounting (including the need for extensive expert work), and a concern that such discovery could not be completed in the time remaining prior to trial. *See generally* ECF No. 22-1. In contrast, circumvention only "occurs where the applicant uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022). Nothing in the decision indicates that such damages discovery is prohibited under a strict English law time-bar or would have been denied if sought earlier, or that Petitioners are prohibited from seeking third-party discovery concerning asset movement. Consequently, the Application does not run afoul of or conceal an attempt to circumvent foreign evidence-gathering rules.

Fourth and finally, the discovery sought is not "unduly intrusive or burdensome." The Court assesses whether discovery would be "overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees,* 793 F.3d at 302 (2d Cir. 2015). The proposed subpoena requests "[a]ll [d]ocuments and [c]ommunications . . . regarding transfers or settlement payments made by or to or otherwise concerning" six individuals and twenty-seven entities from January 1, 2018 onward. Butler Decl., Ex. A at 6-7. Given that the English proceeding inherently involves ultra-high-net-worth families and their business entities, the proposed discovery is wide, but not unduly intrusive. Bourlakova Mem. at 5. The Bourlakovas were permitted to take discovery of similar, if not broader, scope from CHIPS, in connection with the same underlying litigation. *See In re Bourlakova,* 2024 WL 4839047 at *5 (citing *In re Byrne,* 23-MC-048 (VEC),

2023 WL 3203811, at 6 (S.D.N.Y. May 2, 2023)). Ultimately, the Court finds that the discovery sought is not unduly intrusive or burdensome.

## CONCLUSION

Accordingly, the application is **GRANTED**. Petitioners' U.S. counsel, White and Williams LLP, is authorized to serve the subpoena attached as Exhibit 1 to the Butler Declaration on Respondents, together with a copy of this Order, no later than **thirty days** from the date of this Order. No later than **the same date**, and *before* serving the subpoena on Respondents, Petitioners shall provide actual notice and courtesy copies of the subpoena, application, and supporting documents to the party or parties against whom the requested discovery is likely to be used through any such party's counsel, or if the identity of such party's counsel is unknown, on that party directly. *See In re Application of Sarrio, S.A.*, 119 F.3d at 148 (2d Cir. 1997) ("[T]he ultimate targets of a § 1782 discovery order issued to third parties have standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute." (internal quotation marks omitted)). Petitioners shall promptly file proof of such service on ECF.

Any further proceedings shall be governed by the Federal Rules of Civil Procedure, the Local Civil Rules for the United States District Court for the Southern District of New York, and the Court's Individual Rules and Practices in Civil Cases. If the parties believe that a protective order is appropriate or necessary, they shall adhere to the procedures set forth in Section 5.N of the Court's Individual Rules. In the event of any dispute concerning the subpoena or any proposed protective order, the parties shall meet and confer before raising the dispute with the Court.

The Clerk of Court is directed to terminate ECF Nos. 1 and 9.

SO ORDERED.

Dated: October 30, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge